# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-2144V**

|  |  |
|---|---|
| KAREN DONAHUE, as executor of ESTATE OF MARY LOU HILVERS, | Chief Special Master Corcoran |
| Petitioner, | Filed: October 6, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Konrad Kircher, Kircher Law, Maineville, OH,* for Petitioner.

*Elizabeth Andray, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION DISMISSING CASE[1]

On November 8, 2021, Mary Lou Hilvers filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). She alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, which was caused by the influenza ("flu") vaccine she received on September 17, 2020. Petition at 1, ¶ 2, 25. Additionally, she asserted that she "suffered residual pain and complications from injuries suffered as a result of the negligent administration of the [v]accination for more than six (6) months." *Id.* at ¶ 23. On September 8, 2025, Karen Donahue,[3] Ms. Hilver's daughter and executor of

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Any reference to "Petitioner" in this Decision will mean Ms. Donahue.

her estate, was substituted as Petitioner after Ms. Hilvers sadly passed away from a condition unrelated to her alleged SIRVA injury. ECF Nos. 33-34.

For the reasons set forth below, I hereby DENY entitlement. Petitioner has provided insufficient proof of severity of injury – a requirement for all Vaccine Act claims. *See* Section 11(c)(1)(D)(i).[4] Accordingly, no version of the claim can succeed, and the matter is appropriately dismissed.

## I.     Relevant Procedural History

Along with the Petition, Ms. Hilvers filed the affidavit and some of the medical records required under the Vaccine Act. Exs. 1-5, 7-13, ECF No. 1; *see* Section 11(c). She also filed supporting affidavits from her son and daughter and a statement and curriculum vitae from her orthopedist (Dr. Gallagher). Exs. 5-6, 14 ECF No. 1. Over the subsequent five-month period, Ms. Hilvers filed her remaining medical records and a supplemental affidavit (addressing the basic requirements of Section 11(c)). Exs. 16-19, ECF Nos. 9, 12. On April 25, 2022, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 14.

During the initial July 2022 status telephonic conference, the parties discussed potentially-outstanding medical records and two possible factual issues - related to onset and severity - needing further development while awaiting Respondent's medical review. Order, issued July 25, 2022, ECF No. 19. On December 2, 2022, Ms. Hilvers provided briefing and additional medical records. Brief of Petitioner ("Brief"), ECF No. 21; Exs. 20-22, ECF No. 21. On May 25, 2023, Respondent responded, requesting that I dismiss the claim. Response to Petitioner's Fact Briefing and Respondent's Rule 4(c) Report ("Opp."), ECF No. 23.[5]

On April 5, 2024, I issued an order instructing Ms. Hilvers to provide the preponderant evidence needed to show six-months sequelae to avoid dismissal of the claim. Order to Show Cause at 10-11, ECF No. 42. On December 3, 2024, she filed a response, along with outstanding medical records from treatment in 2020-21 and an updated medical record from a visit in April 2023. Brief in Response to Show Cause Order

---

[4] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii). Rather, this case turns on Petitioner's inability to prove six months of post-onset sequelae.

[5] Respondent filed the same document twice, using both the Rule 4(c) Report and Response CM/ECF events. *See* ECF Nos. 22-23. I will reference the document filed last, using the CM/ECF event for a response.

("Show Cause Response"), ECF No. 32; Exs. 23-26, ECF No. 31. The matter is now ripe for adjudication.

## II.     Applicable Legal Standards

Petitioners carry the burden of establishing the matters required in the petition by a preponderance of the evidence. Section 13(a)(1)(A). One such requirement is "documentation demonstrating that [the petitioner][6] ... suffered the residual effects or complications of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Section 11(c)(1)(D)(i); *see also Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

As stated by Congress when amending the Vaccine Act in 1987, the six-month severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373. The only exception is the alternative added in 2000, a showing that the vaccine injury required inpatient hospitalization and surgical intervention. *Children's Health Act of 2000*, Pub. L. No. 106–310, § 1701, 114 Stat. 1101, 1151 (2000) (codified as amended at 42 U.S.C. § 300aa–11(c)(1)(D)(iii)). This exception was added to allow compensation in intussusception cases which often required surgical intervention but then resolved in less than six months. *Id.*

The Act prohibits finding a petition requirement "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

---

[6] Or other vaccinee, e.g., a minor or other person who is unable to represent his or her own interests, on behalf of whom the claim is brought.

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

## III.    Relevant Factual History

### A.    The Contemporaneous Medical Records

Ms. Hilvers (who was 79 at the time of vaccination) had a pre-vaccination medical history that included significant joint pain due to multiarticular arthritis and osteoarthritis. *See, generally,* Exs. 3-4, 26. In 2018, she attended multiple physical therapy ("PT") sessions and visits to her orthopedist for right knee and lower back pain. Exs. 20-21. In 2020-21, she was diagnosed with chronic back pain, chronic pain syndrome, lumbar radiculitis, osteoarthritis, and spinal stenosis. Ex. 4 at 48-49[7] (July 27, 2020 primary care provider ("PCP") record). Ms. Hilvers received consistent medical care for lower back and left hip pain during the year prior to and after vaccination that included multiple corticosteroid injections, daily prescribed pain medication such as oxycodone which caused her to become constipated, and a pain stimulator implant. Ex. 26 (pain management specialist medical records); *see* Ex. 12 at 25 (noting Ms. Hilvers was unable to undergo an MRI in November 2020 due to "leads from a spinal stimulator").

On September 17, 2020, Ms. Hilvers received the flu vaccine in her left deltoid. Ex. 2 at 11. Fifteen days later, on October 2, 2020, she visited her PCP seeking steroid injections for right knee and *right* shoulder pain that she attributed to the osteoarthritis shown on recent x-rays. Ex. 4 at 54. Noting that Ms. Hilvers had benefited from such injections in the past (*id.*), the PCP administered steroid injections in her right knee and *right* shoulder joints (*id.* at 57). On October 7, 2020, Ms. Hilvers was seen by her pain management specialist for her lower back and left hip pain. Ex. 26 at 22-24.

Approximately three weeks later (and now more than five weeks post-vaccination), Ms. Hilvers visited the emergency room ("ER"), complaining of *left* arm pain after her vaccination three weeks earlier.[8] Ex. 7 at 2 (October 26th ER visit). Describing her arm as

---

[7] This exhibit is paginated with two different sets of numbers. To avoid any confusion, I will cite to the page numbers that correspond to the page numbers in the CM/ECF produced header. I also will follow this citation method if an exhibit is not paginated. *E.g.,* Ex. 25.

[8] Petitioner incorrectly identified both the vaccination and pain onset as occurring three weeks earlier, rather than the accurate time frame – more than five weeks prior. *Compare* Ex. 7 at 2 (medical history provided on October 26, 2020) *with* Ex. 18 at 2 (vaccine record showing administration on September 17, 2020).

initially "very swollen and red," she reported that the swelling had improved, but the pain, traveling down her arm and into her back, had stayed the same or worsened. Ms. Hilvers denied any tingling or numbness but added that her fingers felt swollen. *Id.* X-rays and an examination revealed mild soft tissue edema and tenderness over her left deltoid but no redness, swelling, or limitations in range of motion ("ROM"). *Id.* at 5-6. She was discharged with instructions to follow-up with her PCP if her symptoms worsened. *Id.* at 6-7.

Two days later, on October 28, 2020, Ms. Hilvers visited her PCP with the same description of left arm pain since her flu vaccine. Ex. 4 at 66. In this record, the flu vaccine was described as occurring two and three weeks earlier.[9] Ex. 4 at 66. The PCP observed "some firmness and mild edema of the muscle." *Id.* at 68. Noting that Ms. Hilvers was already "on chronic pain medication," her PCP prescribed a prednisone taper. *Id.* at 69.

During the subsequent week, Ms. Hilvers called her PCP twice to complain of continued left shoulder pain. Ex. 9 at 2. She reported that the prescribed prednisone helped for a few days but was no longer alleviating her pain. *Id.*

On November 4, 2020, Ms. Hilvers visited her PCP again, complaining of left arm pain since her vaccination, currently at a level of seven to ten out of ten and radiating down her arm into her fingers. Ex. 4 at 78. Reporting that she had finished the prednisone medication that day and had tried topical pain relievers without relief, Ms. Hilvers stated that she believed her "pain [wa]s in her bone." *Id.* It was noted that she exhibited a range of motion limited by pain and had arthritis in her pointer finger. *Id.* The PCP ordered an MRI and prescribed diclofenac sodium and lidocaine patches. *Id.* at 78-79.

Approximately one week later (on November 12, 2020), Ms. Hilvers was seen by an orthopedist. Ex. 11 at 2. In the record from that visit, it was noted that she was unable to undergo an MRI due to leads from a spinal stimulator, and the x-rays taken on October 26, 2020, showed moderate AC joint arthritis and subtle hooking to the acromion, but were otherwise unremarkable. *Id.* at 2. Determining that Ms. Hilvers was suffering from left shoulder pain, rotator cuff tendinitis, and AC joint arthritis, the orthopedist administered a steroid injection. *Id.* at 3. An ultrasound performed four days later, on November 18, 2020, revealed evidence of inflammation of the subacromial space and biceps tendon sheath. Ex. 12 at 25.

---

[9] Petitioner again incorrectly identified both the vaccination and pain onset as occurring later, two to three weeks ago instead of the more accurate six weeks earlier. *See supra* note 4; *compare* Ex. 4 at 66 (medical history provided on October 28, 2020) *with* Ex. 18 at 2 (vaccine record showing administration on September 17, 2020).

From November 30, 2020, through January 26, 2021, Ms. Hilvers attended eight PT sessions for treatment of her left shoulder pain. Ex. 13 at 9-45. At her first session, she described dull and achy pain, ranging from nine to ten in severity. *Id.* at 35, 39. Reporting an inability to perform many routine tasks – such as opening a jar or carrying a shopping bag, she was given a 95 percent disability rating. *Id.* at 33, 35, 39, 44. On this same date (November 30, 2020), Ms. Hilvers also visited her pain management specialist for follow-up of her lower back and left hip pain. Ex. 26 at 19-21.

By her fourth PT session on January 4, 2021, Ms. Hilvers was feeling much better, with pain levels ranging from zero to six. Ex. 13 at 25. At her last PT session on January 26, 2021, she reported no pain and was assessed as exhibiting normal ROM and only a slight weakness compared to the right shoulder. *Id.* at 14. She also had no difficulty performing any of the listed tasks, was noted to have met all goals, and was discharged from PT with a home exercise program. *Id.* at 13, 17, 86.

During this time, Ms. Hilvers also sought orthopedic treatment for her right knee pain. Ex. 12 at 14-23. On February 8, 2021, she returned for additional PT related only to her right knee. Ex. 13 at 54. The same day, she also visited her pain management specialist for treatment of her lower back and left hip pain. Ex. 26 at 16-18. There is no mention of any left shoulder issues in these or subsequent medical records. Ex. 13 at 6-8, 54-85; Ex. 26 at 2-19.

On March 8, 2021, Ms. Hilvers returned to the orthopedist complaining of "numbness and tingling of the left index finger" and "pain in the finger, especially when touched." Ex. 12 at 13. She stated that the '[s]ymptoms ha[d] been present for 6 months and seem to have started after she was given a 'flu shot' in the left deltoid," but had recently worsened. *Id.* The orthopedist diagnosed Ms. Hilvers with carpal tunnel syndrome, greater on the left side than right, with clinical evidence of nerve damages, and ordered EMG/NCS testing. *Id.* at 13-14.

On April 5, 2021, Ms. Hilvers returned to her pain management specialist for further treatment of her lower back and left hip pain. Ex. 26 at 12-15. Although there is no mention of any left finger symptoms, only the usual lower back and left hip pain, acupuncture was administered at that location. *Id.* at 13-15 (including a notation that treatment included "Acupuncture – left second finger"). Thus, it appears that Ms. Hilvers must have mentioned the symptoms she complained of to her orthopedist in early March 2021.

On April 27 and May 11, 2021, Ms. Hilvers returned to the orthopedist for treatment of her right knee pain attributed to severe osteoarthritis. Ex. 12 at 6-13. In the record from the May 11th visit, it was noted that she received treatment from her pain management specialist for lower back pain and chronic pain syndrome which had worsened around

April 17th. Ex. 12 at 6-13. On June 2, 2021, Ms. Hilvers returned to the orthopedist for the administration of a right knee nerve block. *Id.* at 4-5.

On May 24, 2021, Ms. Hilvers also underwent EMG testing on her left hand. She again attributed her left hand pain to the flu vaccine, stating that "the doctor hit a bursa." Ex. 23 at 2. Referencing Ms. Hilver's history of "arthritis and neck pain," the record noted that she occasionally experienced "right hand symptoms" as well as the symptoms on the left. *Id.* Characterized as an abnormal study, the EMG revealed evidence of *right* carpal tunnel syndrome, but a lack of findings related to this condition on the left. *Id.* Although there were no results showing "a Right ulnar mononeuropathy or a Left median or ulnar mononeuropathy" (*id.*), a "Left vs. Right side comparison data for the ulnar motor nerve indicate[d]  abnormal L-R amplitude difference (39.6%)" (*id.* at 3).

On June 7, 2021, Ms. Hilvers returned to her orthopedist to discuss the EMG results and "pain and paresthesia in her left index finger, which was noticed following a Covid[10] immunization injection into a 'bursa' of her left shoulder." Ex. 12 at 3. Noting that the EMG revealed mild right-sided carpal tunnel syndrome but no such findings on the left, the orthopedist observed mild volar wrist swelling and muscle atrophy, a positive Tinel sign[11] and Phalen test,[12] and "hypalgesia[13] in the distribution of the median nerve." Ex. 12 at 3. He administered an injection of lidocaine and Kenalog into Ms. Hilvers's left wrist. *Id.*

Approximately one month later, on July 8, 2021, Ms. Hilvers called the orthopedist, "report[ing] no change in symptoms except for a slight improvement in finger motion." Ex. 24 at 2. She and the orthopedist "agreed to merely watch and wait" with Ms. Hilvers promising to alert the orthopedist if "there [wa]s any rapid change in symptoms."

### B. Declarations, Later Medical Records, and Show Cause Response

Along with her petition, Ms. Hilvers included a statement regarding the cause of her *left shoulder* symptoms from one of her treating orthopedists and affidavits from

---

[10] This reference to the *COVID*, rather than *flu*, vaccine appears to be due to a simple mistake on the part of Ms. Hilvers or the orthopedist.

[11] Tinel sign is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 1716 (32th ed. 2012).

[12] A Phalen test is a carpal tunnel syndrome test when "the site of the carpal tunnel is reduced by holding the affected hand with the wrist fully flexed or extended for 30 to 60 seconds, or by placing a sphygmomanometer cuff on the involved arm and inflating to a point between diastolic and systolic pressure; appearance of numbness or paresthesia indicates carpal tunnel syndrome." DORLAND'S at 1896.

[13] Hypalgesia is "decreased nociception (pain sense)." DORLAND'S at 885.

herself and her adult children. Exs. 5-6, 14-15. The causation statement was dated June 16, 2021, and appears to have been obtained by a prior law firm. Ex. 15 at 1. In his statement, the orthopedist opined "that the flu injection into her left shoulder subacromial space was a direct and proximate cause of her pain and inflammation of her left shoulder [and] [t]he physical therapy I ordered was medically necessary to treat her condition." *Id.* There is no mention, however, of left hand, wrist, or finger symptoms.

The affidavits provided by her adult children echoed Ms. Hilvers's assertions of injection site pain which traveled down her arm to her fingers upon vaccination, along with swelling at the injection site, an inability to close her hand into a fist, and pain and numbness in her finger or fingers[14] for several weeks thereafter. Ex. 5 at ¶¶ 6-7 (Ms. Hilvers's first affidavit); Ex. 6 at ¶¶ 6-7 (son's affidavit); Ex. 14 at ¶¶ 6-7 (daughter's affidavit).[15] They all described similar difficulties resulting from Ms. Hilvers's left arm pain. Ex. 5 at ¶¶ 8-10; Ex. 6 at ¶¶ 8-10; Ex. 14 at ¶¶ 8-10. Although all affiants recounted Ms. Hilvers's trip to the ER on October 26, 2020, Ms. Hilvers described severe pain in "my arm and fingers," while her daughter and son referenced only "arm pain" and "pain," respectively. *Compare* Ex. 5 at ¶ 11 *with* Ex. 6 at ¶ 11; Ex. 14 at ¶ 11. Regarding any long-term symptoms, all affiants stated that Ms. Hilvers "continue[d] to experience pain and numbness in her left index finger which cause[d] her difficulty in gripping and picking things up." Ex. 5 at ¶ 12; Ex. 6 at ¶ 12; Ex. 14 at ¶ 12. None claimed that Ms. Hilvers's left shoulder pain continued. *See* Exs. 5-6, 14.

In response to my order requiring Petitioner to provide additional evidence of severity, Ms. Hilvers filed the medical record from an April 28, 2023 visit to a new orthopedist (hand specialist) for an assessment of her left finger pain. Ex. 25. "[R]elat[ing] the onset of her symptoms to a vaccine in the left deltoid region which she reports to have 'been into the bursa, causing a cyst in the index Finger to wake up and cause burning pain,'" Ms. Hilvers reported a sharp and burning pain over the left index finger "pulp and about the DIP Joint." *Id.* at 1. She did not report or exhibit any tenderness of the wrist, base of her hand, or elbow. *Id.* at 1-2.

After reviewing the results of Ms. Hilvers's prior EMG, the orthopedist concluded that it showed mild median nerve entrapment at the carpal tunnel on the right, but not the left, and mild ulnar nerve entrapment at the cubital tunnel on both the right and left. Ex. 25 at 2. Although he stated that he didn't believe Ms. Hilvers's symptoms were "related

---

[14] Ms. Hilvers and her son referenced the singular "finger", and her daughter stated the pain and numbness occurred in multiple "fingers." *Compare* Ex. 5 at ¶ 7; Ex. 6 at ¶ 7 *with* Ex. 14 at ¶ 7. Although this difference could have been due to a simple mistake, it is worth mentioning since the timing and type of any left finger symptoms is highly relevant to the issue of severity.

[15] The affidavits of Ms. Hilvers and her daughter were executed on October 1, 2021. Ex. 5 at 2; Ex. 14 at 2. The affidavit of Ms. Hilvers's son was executed six days later on October 7, 2021. Ex. 6 at 2.

to a distal nerve entrapment" (*id.* at 2), he recommended conservative measures (to which Ms. Hilvers voiced a preference) designed to treat, but not cure, her condition, specifically "attention to elbow positioning and pressure, activity modification, and the judicious use of over-the-counter anti-inflammatory medication" (*id.* at 3). Concluding that he "d[id] not find an etiology for her symptoms in [his] evaluation of her hand & wrist," the orthopedist stated that he would "refer Ms. Marylou W. Hilvers for evaluation of her shoulder and/or cervical spine to see if there is an ongoing problem at that level which may explain her presenting complaints." *Id.*

In her written response, Ms. Hilvers maintained that she had provided sufficient evidence of severity, as well as causation, and thus was entitled to compensation. Show Cause Response at 1, 3-4. Although she "concede[d] that her shoulder injury d[id] not meet the Act's six-month severity requirement," Ms. Hilvers insisted that her left index finger pain, characterized as directly attributable to the September 17, 2020 flu vaccine, allows her to succeed pursuant to a non-Table claim. *Id.* at 1. She based the assertion of a causal connection between vaccine and left index finger symptoms on her treating orthopedists' view that her pain could not be attributed to either carpal tunnel syndrome or cubital tunnel syndrome. *Id.* at 2-4.

## IV.    Analysis

To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that Ms. Hilvers suffered symptoms of her alleged SIRVA beyond March 17, 2021 (assuming an immediate onset on September 17th).[16] However, the record as it currently stands supports sequelae only through late January 2021, slightly more than four months post-vaccination. By her PT discharge on January 26, 2021, Ms. Hilvers reported no pain, and only slight weakness. She had no difficulty performing the listed tasks, and was noted to have met all PT goals.

Petitioner concedes that she cannot show that Ms. Hilvers's left shoulder pain continued for the required six months, but maintains severity is met because Ms. Hilvers complained of something different - left index finger pain beyond the six-month mark. Petitioner insists she has proven a causal link between vaccination and this later pain. But for several reasons, this assertion is not adequately supported.

First, the record clearly reflects that Ms. Hilvers suffered from arthritis in her index finger *prior* to vaccination, as well as significant cervical issues both prior to and after vaccination. Additionally, any symptoms Ms. Hilvers described prior to the late January

---

[16] Although Ms. Hilvers provided a later pain onset date on several occasions, she simultaneously identified the same date for vaccination. *See supra* notes 8-9. Thus, it is likely that Petitioner could prove the immediate pain onset as alleged.

2021 resolution of her left shoulder pain (swelling in her fingers at the ER visit on October 26, 2021, and pain that radiated to her fingers at the November 4, 2021 visit with her orthopedist) differ from the symptoms she described in early March 2021, and later. At these later visits, Ms. Hilvers consistently described pain, numbness, and tingling in her left index finger only, especially the tip. And when undergoing an EMG, she described occasional pain in her right hand as well as her left. Most importantly, it is illogical for Ms. Hilvers to have a reoccurrence of finger pain attributable to her prior left shoulder injury without *any* return of left shoulder symptoms. This kind of concern cannot be credibly linked to SIRVA-associated shoulder pain.

I credit Petitioner's assertion that Ms. Hilvers's treating orthopedists eliminated distal nerve entrapment conditions, such as carpal tunnel syndrome and cubital tunnel syndrome, as possible causes of her left index finger pain. But the cause of Ms. Hilver's later left index finger pain, numbness, and tingling remains unclear. Even the orthopedist who evaluated her on April 28, 2023, stated that he could not yet determine the etiology of her symptoms. He opined that additional testing would be required to determine whether Ms. Hilvers had ongoing shoulder or cervical issues which could explain her symptoms. And it does not appear that he was aware of her prior arthritis diagnosis which presents yet another potential alternative cause.

Ms. Hilvers certainly *believed* her later symptoms were inked to her prior vaccination. But her belief is not adequately supported by the preponderant evidence in this case. There remain multiple other alternative causes more likely to be the cause of her left index finger pain.

To establish the required six-month severity, Petitioner must provide preponderant evidence connecting the later symptoms Ms. Hilvers experienced (her left finger pain and numbness) to the flu vaccine she received in September 2020. She has failed to meet her burden of proof on this issue.

## Conclusion

The Vaccine Act prohibits me from finding a petitioner entitled to compensation based upon the petitioner's claims alone. Section 13(a). To date, and despite ample opportunity, Petitioner has failed to provide preponderant evidence that Ms. Hilvers suffered the residual effects of her alleged injury for more than six months or suffered an in hospital surgical intervention. Section 11(c)(1)(D).

Petitioner was informed that failure to provide preponderant to satisfy the Vaccine Act's severity requirement would be treated as either a failure to prosecute this claim or

as an inability to provide supporting documentation for this claim. Accordingly, this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.[17]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[17] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.